UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TERRENCE HAMMOCK, :<br>      Plaintiff                     :<br>                                   :<br>      v.                            :    CIVIL NO. 4:CV-04-1015<br>                                   :<br>                                   :    (Judge McClure)<br>CAPTAIN BEBOW, ET AL.,     :<br>      Defendants           : | |

**MEMORANDUM AND ORDER**

August 30, 2005

**Background**

Terrence Hammock ("Plaintiff"), an inmate presently confined at the United States Penitentiary, Lewisburg, Pennsylvania ("USP-Lewisburg"), initiated this Bivens[1]-type pro se civil rights action. Service of the complaint was previously ordered.

Named as Defendants are the following officials at Hammock's prior place of confinement, the Schuylkill Federal Correctional Institution, Minersville, Pennsylvania ("FCI-Schuylkill"): Warden John Nash, Captain David Bebow;

---

[1] See Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). Bivens stands for the proposition that "a citizen suffering a compensable injury to a constitutionally protected interest could invoke the general federal question jurisdiction of the district court to obtain an award of monetary damages against the responsible federal official." Butz v. Economou, 438 U.S. 478, 504 (1978).

Lieutenant Joseph Henger, and Lieutenant M. Breckon.  His complaint filed May 7, 2004 states that he was placed in the segregation unit at FCI-Schuylkill on March 31, 2004.  Plaintiff's placement was "pending an investigation - because of a fight that I have no knowledge of nor did I do."[2]   Record document no. 1, ¶ IV(1).

Hammock contends that during the course of his alleged improper confinement in segregation, he was housed under unconstitutional conditions of confinement.  Specifically, Plaintiff maintains that he was:  denied adequate showering, recreation, commissary and telephone privileges; limited to one haircut a month; and unable to practice his religious beliefs.  His complaint adds that: the cells were overcrowded; showers were prone to flooding; there was poor ventilation; inadequate clothing, drinking water, medical treatment and bedding were provided; and there was an excessive amount of second hand cigarette smoke.  Hammock also claims that he was not provided with adequate access to the courts and medical treatment.  He seeks compensatory damages and injunctive relief, including a transfer to a different correctional facility.

Presently pending is Defendants' motion to dismiss (Record document no. 36) the complaint for Plaintiff's failure to exhaust available administrative remedies.

---

[2] Plaintiff notes that on that same day he was taken to the prison hospital for an examination which purportedly failed to reveal any physical evidence that he had been in an altercation.

2

The motion has been briefed and is ripe for consideration.

**Discussion**

**Mootness**

Adjudicatory power of a federal court depends upon "the continuing existence of a live and acute controversy." Steffel v. Thompson, 415 U.S. 452, 459 (1974) (emphasis in original). "The rule in federal cases is that an actual controversy must be extant at all stages of review, not merely at the time the complaint is filed." Id. at n.10 (citations omitted). "Past exposure to illegal conduct is insufficient to sustain a present case or controversy regarding injunctive relief if unaccompanied by continuing, present adverse effects." Rosenberg v. Meese, 622 F. Supp. 1451, 1462 (S.D.N.Y. 1985) (citing O'Shea v. Littleton, 414 U.S. 488, 495-96 (1974)).

Furthermore, "[a]bsent class certification, an inmate's claim for injunctive and declaratory relief in a section 1983 action fails to present a case or controversy once the inmate has been transferred." Wahl v. McIver, 773 F.2d 1169, 1173 (11th Cir. 1985) (citation omitted); see also Carter v. Thompson, 808 F. Supp. 1548, 1555 (M.D. Fla. 1992).

On December 27, 2004, Plaintiff notified this Court that he had been transferred to USP-Lewisburg. See Record document no. 59. There is no

indication that Hammock will be returned to FCI-Schuylkill in the foreseeable future.

In light of the Plaintiff's transfer to USP-Lewisburg, he is no longer being subject to the deplorable conditions which allegedly existed at FCI-Schuylkill. Since Hammock has been afforded the transfer he requested in his complaint under an application of the standards announced in Steffel and Wahl, his complaint to the extent that it seeks injunctive relief is subject to dismissal on the basis of mootness.

**Motion to Dismiss**

A court, in rendering a decision on a motion to dismiss, must accept the veracity of the plaintiff's allegations. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); White v. Napoleon, 897 F.2d 103, 106 (3d Cir. 1990). In Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996), the Court of Appeals for the Third Circuit added that when considering a motion to dismiss based on a failure to state a claim argument, a court should "not inquire whether the plaintiffs will ultimately prevail, only whether they are entitled to offer evidence to support their claims."  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

"The test in reviewing a motion to dismiss for failure to state a claim is

whether, under any reasonable reading of the pleadings, plaintiff may be entitled to relief." Holder v. City of Allentown, 987 F.2d 188, 194 (3d Cir. 1993) (citation omitted). Additionally, a court must "accept as true the factual allegations in the complaint and all reasonable inferences that can be drawn from them." Markowitz v. Northeast Land Co., 906 F.2d 100, 103 (3d Cir. 1990); Independent Enters., Inc. v. Pittsburgh Water & Sewer Auth., 103 F.3d 1165, 1168 (3d Cir. 1997). Finally, it is additionally well-settled that pro se complaints should be liberally construed. Haines v. Kerner, 404 U.S. 519, 520 (1972). This Court will now discuss Defendants' motion in light of the standards set forth above and Rule 12(b)(6) of the Federal Rules of Civil Procedure.

Defendants contend that Plaintiff failed to exhaust his available administrative remedies with respect to each of the claims set forth in his complaint. See Record document 42, p. 5. They additionally note that Hammock's complaint acknowledges that the grievance process was not completed.

42 U.S.C. § 1997e(a) provides as follows:

> No action shall be brought with respect to prison conditions under Section 1979 of the Revised Statutes of the United States (42 U.S.C. 1983), or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

An inmate's failure to comply with the administrative exhaustion requirement constitutes an affirmative defense. See e.g., Massey v. Helman, 196 F.3d 727, 735 (7th Cir. 2000), cert. denied, 532 U.S. 1065 (2001); Jenkins v. Haubert, 179 F.3d 19, 29 (2d Cir. 1999); Robinson v. Dalton, 107 F.3d 1018, 1021 (3d Cir. 1997)(holding, in the context of a Title VII case, that failure to exhaust administrative remedies is an affirmative defense). Consequently, a prisoner does not have to allege in his complaint that he has exhausted administrative remedies. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002). Rather, it is the burden of a defendant asserting the defense to plead and prove it. Id.; Williams v. Runyon,130 F.3d 568, 573 (3d Cir. 1997); Charpentier v. Godsil, 937 F.2d 859 (3d Cir. 1991); Fed.

R. Civ. P. 8(c).

The BOP has established a multi-tier Administrative Remedy Program whereby a federal prisoner may seek review of any aspect of his imprisonment.[3] See 28 C.F.R. §§ 542.10-542.19 (1998). "This program applies to all inmates confined in institutions operated by the Bureau of Prisons, to inmates designated to Community Corrections Centers (CCCs) under Bureau of Prisons' responsibility, and to former inmates for issues that arose during their confinement but does not apply to inmates confined in other non-federal facilities." Id. at § 542.10.

The program provides that, with certain exceptions, "... an inmate shall first present an issue of concern informally to staff, and staff shall attempt to informally

---

3. Matters excluded from this program are set forth at 28 C.F.R. § 542.12, which states as follows:

> (a) An inmate may not use this Program to submit a Request or Appeal on behalf of another inmate. This program is intended to address concerns that are personal to the inmate making the Request or Appeal, but shall not prevent an inmate from obtaining assistance in preparing a Request or Appeal, as provided in § 542.16 of this part.
> (b) Requests or Appeals will not be accepted under the Administrative Remedy Program for claims for which other administrative procedures have been established, including tort claims, Inmate Accident Compensation claims, and Freedom of Information or Privacy Act requests. Staff shall inform the inmate in writing of the appropriate procedure if the Request or Appeal is not acceptable under the Administrative Remedy Program.

resolve the issue before an inmate submits a Request For Administrative Remedy."[4] Id. at § 542.13(a). Next, if informal resolution fails, the inmate must submit "a formal written Administrative Remedy Request, on the appropriate form (BP-9)," within 20 "calendar days following the date on which the basis for the Request occurred." Id. at § 542.14(a). If a valid reason for delay is given, an extension of the filing time may be granted. Id. at 542.14(b). The Warden has 20 calendar days from the date the Request or Appeal is filed in which to respond. Id. at § 542.18.

If not satisfied with the Warden's response, an inmate may appeal on the appropriate form (BP-10) to the Regional Director within 20 calendar days of the date the Warden signed the response. Id. at § 542.15. Finally, if the inmate is dissatisfied with the Regional Director's response, that decision may then be appealed on the appropriate form (BP-11) to the General Counsel within 30 calendar days from the date the Regional Director signed the response. Id. "When the inmate demonstrates a valid reason for delay, these time limits may be extended." Id. The Regional Director has 30 calendar days to respond and the General Counsel has 40 calendar days in which to respond. Id. at § 542.18.

---

4. CCC inmates are not required to seek informal resolution. Id. at § 542.13(b). Informal resolution is not required for those matters identified in § 542.14(d), which include sensitive issues and DHO, Control Unit, and Controlled housing status appeals. Id. Additionally, informal resolution may be waived in individual cases at the discretion of either the Warden or the institution Administrative Remedy Coordinator "when the inmate demonstrates an acceptable reason for bypassing informal resolution." Id.

The response time provided for at each level may be extended in writing "once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level." Id. Additionally, "[i]f the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." Id.

In support of their argument, Defendants state that institutional records establish that Hammock filed six (6) administrative grievances. All of the grievances were filed after the initiation of this action. Only one grievance was properly presented at the regional level and none of the grievances was submitted for final consideration by the General Counsel.

The first grievance, submitted on May 12, 2004, appealed the results of a disciplinary hearing and asserted claims of unconstitutional conditions in the SHU. It was rejected without prejudice on various procedural grounds. The primary basis for rejection was because the grievance was initially filed at the Regional Office level instead of the institutional level, i.e., with the Warden.

One week later, Plaintiff submitted a second grievance which solely appealed the result of his disciplinary proceedings and thus, is unrelated to his present claims. This grievance was likewise rejected for various procedural errors. Plaintiff's third and fourth grievances filed respectively on May 28, 2004 and June 1, 2004 likewise appealed the outcome of his disciplinary hearing and were unrelated to Hammock's

present claims.  Hammock's final two grievances initiated during July, 2004 also appealed the sanctions imposed following his disciplinary proceedings.  Both were rejected as being filed at the wrong administrative level.

In his complaint, Hammock clearly admits that he had not completed the administrative grievance procedure at FCI-Schuylkill.  <u>See</u> Record document no. 1, ¶ II(C)).  Plaintiff's initial response to the motion to dismiss does not specifically address the non-exhaustion argument.  Attached to the response are copies of Plaintiff's August 11, 2004 request for a transfer which was submitted to the Regional Director and his August 13, 2004 administrative grievance claiming that he was being held for an excessive period of time in the SHU and which also sought a transfer.  Neither filing asserted any of Plaintiff's present claims of unconstitutional conditions of confinement.  In a second response to the motion to dismiss, Hammock again failed to address the non-exhaustion argument.  <u>See</u> Record document no. 41.  Plaintiff's third response reiterates that his present action "only specifically deals with the deplorable and poor conditions on seg."  Record document no. 44, p. 1.[5]  He generally adds only that he sought administrative relief regarding the deplorable conditions in the SHU.  In yet another response (Record document no. 46), Plaintiff vaguely argues that failure to exhaust administrative remedies is not an adequate basis

---

[5] The Plaintiff adds that he has initiated a second civil rights action regarding his FCI-Schuylkill disciplinary proceedings.

to deny relief.

A review of the undisputed record, especially the exhibits[6] accompanying Defendants' supporting brief, shows that they have satisfied their burden under Williams of establishing that Hammock's present civil rights allegations relating to the conditions of his confinement were not administratively exhausted. Hammock has also not adequately demonstrated any proper basis as to why he should be excused from the exhaustion requirement. Pursuant to the above discussion, dismissal of Plaintiff's civil rights action under § 1997e(a) is appropriate. Consequently,

**IT IS HEREBY ORDERED THAT**:

1. Defendants' motion to dismiss (Record document no. 36) is GRANTED.

2. Plaintiff's action is dismissed without prejudice for failure to exhaust administrative remedies as required pursuant to 42 U.S.C. § 1997e(a).

3. The Clerk of Court is directed to CLOSE the case.

   s/ James F. McClure, Jr.
JAMES F. McCLURE, JR.
United States District Judge

---

[6] In support of their non-exhaustion argument, Defendants have submitted copies of the six (6) grievances and the responses which were generated by those submissions. See Record document no. 42.